*UNITED STATES DISTRICT COURT*
*DISTRICT OF MINNESOTA*
*FOURTH DIVISION*

---

Ketz & Associates, Inc.,
a Minnesota corporation,

Plaintiff,

vs.

BAP, LLC, a New York limited liability company, and Creative Kids Far East, Inc., a New York corporation,

Defendants.

Court No. 0:23-CV-3397 PJS/JFD

**FIRST AMENDED COMPLAINT**
***(Jury Trial Demanded)***

---

***COMES NOW***, the Plaintiff, Ketz & Associates, Inc. ("KAI"), for its claims against Defendants, BAP Investors, LLC ("BAP") and Creative Kids Far East, Inc., ("Creative Kids FE"), stating and alleging as follows:

**PARTIES AND JURISDICTION.**

1. KAI is a Minnesota corporation, with its principal place of business located in the City of Eden Prairie, Hennepin County, Minnesota. KAI is a multi-line, independent sales agency, working on a commission basis, marketing and selling the products of manufacturers and importers in the toy industry. KAI is an "independent sales representative" as that term is defined by Minn. Stat. §325E.37, Subdivision 1.

2. Defendant, BAP Investors, LLC, is a New York limited liability company with its principal place of business in Chestnut Ridge, New York. BAP is in business as a manufacturer and importer of children's toys, and owner of a license to market those toys under a variety of trademarks and trade names, including CREATIVE KIDS and BE

AMAZING, among others. Upon information and belief, BAP is a subsidiary of Defendant, Creative Kids FE. Upon further information and belief, BAP is responsible for the domestic U.S. distribution of Defendants' combined CREATIVE KIDS branded toy business, including any domestic product sold to Target Stores. Upon further information and belief, the individual members of BAP Investors, LLC are residents of the State of New York, but none are citizens of Minnesota.

3. Defendant, Creative Kids FE is a New York corporation, also with its principal place of business located in Chestnut Ridge, New York. Creative Kids FE is also in business as a manufacturer and importer of children's toys under a variety of trade names, including CREATIVE KIDS, BE AMAZING. Upon information and belief, Creative Kids FE is the majority owner of BAP and responsible for the direct import side of Defendants' combined toy business, including direct import programs for Target Stores.

4. At all times relevant to this complaint, Defendants have had a contractual relationship with KAI, a resident of the State of Minnesota. Defendants have also enjoyed the substantial benefits of KAI's efforts which included making millions of dollars in sales of Defendant's products to Target Stores, located in the State of Minnesota. Defendants' employees have routinely visited Minnesota for the purpose of meeting with KAI employees and with the buying staff at Target Stores. As a result, the Court's exercise of personal jurisdiction over Defendants is proper.

5. Because the parties have complete diversity of citizenship (both as to state of organization, principal place of business and citizenship of members of any limited

liability company) and the amount in controversy exceeds $75,000.00, this court has diversity subject matter jurisdiction, per 28 U.S.C. §1332(a).

6. Because this Court has personal jurisdiction over Defendants and many of the events giving rise to the allegations and claims in this case arose out of events transpiring in the State of Minnesota and this district, venue is also proper, per 28 U.S.C. §1391(b)(2) & (3).

7. Pursuant to Fed.R.Civ.P. 38, KAI demands a jury trial.

**FACTS COMMON TO ALL COUNTS.**

8. On or about 2003 KAI was retained by Defendants' predecessor, Steve Spangler, Inc, d/b/a BE AMAZING! ("BE AMAZING") to work as its independent sales representative. The parties agreed that KAI would sell BE AMAZING's toy products to retail accounts in a multi-state territory, which included the State of Minnesota, with a specific focus on opening the Target Stores account. In exchange for these services, BE AMAZING agreed to pay KAI a commission of 10% on all business written to retail store accounts in KAI's assigned territory.

9. In approximately 2005, KAI successfully opened the Target Stores account for BE AMAZING and continued to grow sales to that account for many years, until by 2022, KAI's annual sales of BE AMAZING products totaled $5,239,797.42 annually.

10. In approximately 2018, BAP acquired most of the intellectual property of BE AMAZING, including an exclusive license to use that company's trademarks, trade names, logos and packaging. Given KAI's success selling to and managing the Target

Stores account, BAP retained KAI to continue representing all of its brands to Target Stores.

11. The parties' contract constituted an "independent sales representative agreement" as that term is defined by Minn. Stat. §325E.37, Subd. 1. At all times relevant to this action, the parties' agreement was unwritten and for an indefinite duration. Under the terms of this sales representative agreement, BAP agreed to pay KAI a commission of 5% on the net shipped value of all of its products sold to Target Stores, commissions to be paid in the month following Defendant's receipt of payment from the customer.

12. Sometime thereafter, Creative Kids FE acquired a majority of the units of BAP. At this juncture, KAI had sold both a domestic and direct import programs of Defendants' products to Target Stores. Upon information and belief, BAP remained responsible for fulfillment on the domestic programs and Creative Kids FE for the direct import, all of which was subject to KAI's independent sales representative agreement, as the exclusive sales representative for Target Stores.[1]

13. During the parties' relationship, KAI worked diligently to market and sell Defendants' products. This is reflected by the fact that, in 2023, KAI made over $3.5 Million in sales of Defendants' products to Target Stores, and earned, and should have been paid, commissions of more than $250,000.00.

14. Unfortunately, in 2022, Defendants fell deeply in arrears on their commission payments to KAI, and in so doing breached the parties' sales representative agreement. Presently, on sales made and shipped to Target Stores in 2022, KAI is owed

---

[1] The parties' course of dealing was that commission on all sales (domestic or direct import) were paid to KAI through BAP.

commissions totaling more than $200,000.00, which have not been paid and are long past due.

15. In 2023, the unpaid commission situation grew worse. KAI made numerous demands and requests for Defendants' to address this growing arrearage. Unfortunately, Defendants ignored KAI's demands, and by Q3 of 2023, the unpaid commission balance had ballooned to over $425,000.00 on goods that had been booked, shipped and paid for by Target Stores.

16. Rather than address this massive arrearage, and pay KAI the commissions due, Defendants instead retaliated, and, without warning or good cause, as required by Minnesota law, on or about August 31, 2023, they terminated KAI as independent sales representative to Target Stores, effective immediately.

17. At the time of termination, KAI had pending business with Target Stores, set to ship in Q1 2024, the commissions for which will total approximately an additional $80,000.00. Said commissions to come due and owing to KAI in the month following payment by Target Stores, later in 2024.

18. KAI has made demand for payment of all commissions, and the grace and penalty periods of Minn. Stat. §181.145 have expired, yet Defendants continue to refuse to pay KAI these commissions, and they remain unpaid.

**COUNT I.**
**WRONGFUL TERMINATION.**
**VIOLATION OF MINN. STAT. §325E.37.**

19. KAI reasserts each and every allegation contained in every prior complaint paragraph, as if fully restated herein.

20. KAI is an "independent sales representative" as that term is defined by Minn. Stat. §325E.37, Subd. 1.

21. At all times relevant to this matter, Defendants had in an "independent sales representative agreement" with KAI, as that term is further defined by Minn. Stat. §325E.37, Subd. 1.

22. Because KAI is a Minnesota corporation and KAI's territory for Defendants included the State of Minnesota, KAI has standing to assert claims for relief under the Act, pursuant to Minn. Stat. §325E.37, Subd. 6.

23. Because Defendants' immediate termination of KAI was not predicated on any of the six listed types of gross misconduct, specified in Minn. Stat. §325E.37, Subd. 1(b), Defendants have violated Minn. Stat. §325E.37, Subd. 2(b).

24. Alternatively, because Defendants' termination of KAI independent sales representative agreement was not predicated on any "good cause," as that term is defined by the Act, their termination of KAI's agency violates Minn. Stat. §325E.37, Subd. 2(a).

25. Alternatively, even if Defendants had "good cause" to terminate KAI independent sales representative agreement—which they did not—Defendants' failure to afford KAI both prior written notice of termination and the opportunity to cure the alleged good cause constitutes a violation of Minn. Stat. §325E.37, Subd. 2(a).

26. As a direct and proximate result of Defendants' violations of Minn. Stat. §325E.37, KAI has suffered and will continue to suffer compensatory and consequential damages, which are accruing and recoverable under Minn. Stat. §325E.37, Subd. 5, in an amount to be determined at trial, but which presently exceeds $50,000.00, plus costs and attorneys' fees.

**COUNT II.**
**FAILURE TO PAY COMMISSIONS**
**VIOLATION OF MINN. STAT. §325E.37**

27. KAI reasserts each and every allegation contained in every prior complaint paragraph, as if fully restated herein.

28. Defendants have failed and refused to pay commissions to KAI on sales of their products to Target Stores

29. In accordance with Minn. Stat. §325E.37, Subd. 4, KAI is entitled to commission on all business placed and accepted by Defendants prior to the date of termination, regardless of whether product shipped to the retail store customer.

30. The total amount of commissions presently due or to become due to KAI from Defendants is approximately $500,000.00.

31. By their failure and refusal to pay the commissions described above, Defendants have further violated Minn. Stat. §325E.37, Subd. 4.

32. As a direct and proximate result of Defendants' violation of Minn. Stat. §325E.37, Subd. 4, KAI has suffered compensatory and consequential damages, recoverable pursuant to Minn. Stat. §325E.37, Subd. 5, in an amount to be proven at trial, but which will likely exceed $50,000.00, plus all costs and attorneys' fees.

**COUNT III.**
**BREACH OF CONTRACT.**

33. KAI reasserts each and every allegation contained in every prior complaint paragraph, as if fully restated herein.

34. At all times, there was a sales representative agreement between KAI and Defendants, under the terms of which Defendants agreed to pay KAI a commission of 5% on the net shipped value of their regular sales to Target Stores

35. Under the terms of the parties' contract, Defendants owe, but has refused to pay, KAI commissions totaling approximately $500,000.00.

36. By their failure to pay KAI's commissions, Defendants have breached the parties' contract.

37. As a direct and proximate result of Defendants' breach of contract, KAI has suffered compensatory and consequential damages in an amount to be determined at trial, but which will exceed an additional $50,000.00.

**COUNT IV.**
**QUANTUM MERUIT**

38. KAI reasserts each and every allegation contained in every prior complaint paragraph, as if fully restated herein.

39. At Defendants' request and direction, KAI procured orders Target Stores for the purchase of significant quantities of Defendants' products.

40. KAI undertook to procure these purchase orders in reasonable and justifiable reliance on the promise that Defendants would fairly compensate it for this work.

41. Defendants have enjoyed the substantial benefit of KAI labor and effort in procuring millions of dollars in purchase orders and have realized enormous revenue and income from this business but refuse to compensate KAI for the benefit so received.

42. Alternatively, under the doctrines of quantum meruit and unjust enrichment, KAI is entitled to fair and reasonable compensation for the value of the

benefit it has bestowed upon Defendants, all in an amount to be proven at trial, but which will likely exceed $50,000.00.

**COUNT V.**
**VIOLATION MINN. STAT. §181.145.**

43. KAI reasserts each and every allegation contained in every prior complaint paragraph, as if fully restated herein.

44. Upon information and belief, of the total unpaid commissions due from Defendants to KAI, over $425,000.00 is attributable to goods shipped before the last day or employment, and thereby constitute "commissions earned through the last day of employment" pursuant to Minn. Stat. §181.145, Subd. 1.

45. Following termination, KAI made a written demand upon Defendants for the payment of all overdue commissions.

46. The grace and penalty periods specified in Minn. Stat. §181.145, Subd. 2, have expired, and Defendants continue their refusal to pay KAI commissions earned though the last day of employment, in the amount noted above.

47. By their conduct, Defendants have violated the prompt commission payment provisions of Minn. Stat. §181.145, Subd.2, and in so doing have incurred the mandatory statutory penalty, specified in Minn. Stat. §181.145, Subd. 3.

48. As a direct and proximate result of Defendants' further violation of Minnesota law, KAI has suffered compensatory and consequential damages in an amount to be determined at trial, but which will exceed an additional $425,000.00 plus the mandatory statutory penalty, costs and attorneys' fees.

***WHEREFORE***, KAI respectfully requests the Court enter an order for judgment, in its favor, against Defendants, jointly and severally, for the following relief:

1. The immediate reinstatement of KAI as Defendants' independent sales representative, per Minn. Stat. §325E.37, Subdivision 5.

2. In addition, an award of compensatory and consequential damages from Defendants sufficient to compensate KAI for commissions lost on sales to Target Stores from the date of Defendants' illegal termination of its independent sales representative agreement to the date of reinstatement, per Minn. Stat. §325E.37, Subd. 5, in an amount to be proven at trial, but which will likely exceed $50,000.00.

3. Alternatively, in the event reinstatement of KAI's independent sales representative agreement is not possible, an award of further compensatory and consequential damages in favor of KAI against Defendants, equivalent to the future commissions KAI will lose as the result of Defendants' illegal termination of its sales representative agreement, in an amount to be proven at trial, but which will exceed an additional $50,000.00;

4. An award of compensatory and consequential damages to KAI, against Defendants in the form of unpaid commissions and other damages, for their violation of Minn. Stat. §325E.37, Subd. 4, multiple breaches of the parties' contract, or under the doctrine of quantum meruit, in an amount to be determined at trial, but which will likely exceed an additional $50,000.00.

5. An award of compensatory and consequential damages to KAI against Defendants for their violation of the prompt commission payment provisions of Minn. Stat. §181.145, including unpaid commissions and the mandatory statutory penalty provided therein, in an amount to be proven at trial, but which will exceed an additional $50,000.00.

6. An award of KAI's costs, disbursements, statutory interest and attorneys' fees, against Defendants, per Minn. Stat. §§325E.37 and 181.145 or as otherwise allowed by law; and

7. Such further relief as the Court deems just and reasonable.

Respectfully Submitted:

Dated: November 10, 2023.

***TAYLOR FRICTON, PLLC***
*/s/ D. Clay Taylor*
D. Clay Taylor (#204857)
7300 Metro Blvd., Suite 350
Edina, MN 55439
Phone 612.716.3829
Email clay@replawyer.com

ATTORNEY FOR PLAINTIFF
KETZ & ASSOCIATES, INC.

## ACKNOWLEDGMENT.

The undersigned does hereby acknowledge that costs, disbursements and attorneys' fees and witness fees may be awarded to the party opposing this action or motion pursuant to Minn. Stat. §549.211.

Dated: November 10, 2023.

***TAYLOR FRICTON, PLLC***
*/s/ D. Clay Taylor*
D. Clay Taylor (#204857)
7300 Metro Blvd., Suite 350
Edina, MN 55439
Phone 612.716.3829
Email clay@replawyer.com

ATTORNEY FOR PLAINTIFF
KETZ & ASSOCIATES, INC.